UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 21-cv-23489-MCALILEY
[CONSENT CASE]

DAVID PALM,

    Plaintiff,

v.

TAURUS INTERNATIONAL
MANUFACTURING, INC., and
TAURUS HOLDINGS, INC.,

    Defendants.
_____/

## ORDER GRANTING MOTION TO TRANSFER VENUE

Defendants Taurus International Manufacturing, Inc. and Taurus Holdings, Inc. (together, "Taurus") filed a Motion to Transfer Venue of this action to the Northern District of Indiana. (ECF No. 22). Plaintiff David Palm filed a response, and Taurus a reply. (ECF Nos. 23, 24). Having carefully reviewed the parties' memoranda of law, the pertinent portions of the record and the applicable law, for the reasons explained below the Court concludes that transfer is warranted.

**I.    BACKGROUND**

Plaintiff filed suit in September 2021, (ECF No. 1), and at this early stage in the proceedings, the Court assumes that the facts alleged in the Complaint are true.

Plaintiff sues to recover damages for personal injuries he sustained when his Taurus pistol (the "Pistol") "unintentionally discharged due to a safety defect which rendered his

pistol unreasonably dangerous and unfit for its intended use." (ECF No. 1-1 at ¶ 1). The Pistol was manufactured by Forjas Taurus, S.A., a Brazilian corporation that is not a defendant here. (*Id*. at ¶ 11). Plaintiff alleges that Forjas Taurus shipped the Pistol to the Taurus Defendants, which then distributed the Pistol in the United States.[1] (*Id*.). At the time that Taurus distributed the Pistol, Taurus maintained its headquarters in Florida. Taurus later moved its headquarters to Bainbridge, Georgia and no longer has a business presence in Florida. (ECF No. 22-1 at ¶ 5).

Plaintiff alleges that his Pistol contains a safety defect that "allows the trigger to move rearward when the pistol is subject to impact or dropped," which causes the Pistol to "fir[e] unexpectedly and against the intentions of the pistol's handler." (ECF No. 1-1 at ¶ 1). Plaintiff contends that "[a] central liability issue in this case arises from Taurus Defendants' failure to test and inspect Plaintiff's Pistol in order to determine its defective nature prior to selling it and thereafter placing a defective firearm into the stream of commerce – all of which took place at the Taurus Defendants' place of operations located in Miami-Dade County." (*Id*. at ¶ 19). Plaintiff does not allege when he purchased the Pistol, where, or from whom.

Plaintiff alleges that he was injured when, after cleaning the Pistol and placing it on a shelf, the Pistol fell from the shelf, struck his living room floor and fired, even though the safety lever was in the "on" or "safe" position. (*Id*. at ¶ 57). Plaintiff resides in Stark County, Indiana, and his injury occurred there. (*Id*. at ¶ 9; ECF No. 22-3 at 3). Taurus

---

[1] Plaintiff sometimes refers to his Pistol as the "Class Pistols" even though this is not a putative class action. (*Id*.).

contends that Plaintiff provided a different explanation to Indiana police and hospital staff immediately after his injury. (ECF No. 22 at 2-3). Deputy C. Bortone of the Starke County Sheriff's Department interviewed Plaintiff at the hospital on the date of his injury. (ECF No. 22-3). According to the police report, Plaintiff told Deputy Bortone that "he was cleaning his gun and attempting to put i[t] back together when it went off shooting himself in the left hand…." (*Id*. at 3). Deputy Bortone also inspected Plaintiff's home where the injury occurred and documented the forensic evidence he observed, including the location of a bullet hole, partial piece of a projectile, and blood splatters. (*Id*.). Plaintiff's medical records from St. Vincent Hospital and Starke Hospital, both in Indiana, similarly reference the circumstances surrounding Plaintiff's injury, namely that Plaintiff was shot when cleaning his gun. (ECF No. 22-4 at 25, 45, 49). Taurus contends that this evidence is material to their defense that "Plaintiff mishandled the Subject Pistol and shot himself." (ECF No. 22 at 10).

## II. ANALYSIS

Taurus argues that this action should be transferred to the Northern District of Indiana pursuant to 28 U.S.C. § 1404.[2] Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Taurus, as the movant, bears the burden to demonstrate that transfer is warranted. *Perlman v. Delisfort-Theodule*,

---

[2] Starke County is located in the Northern District of Indiana.

3

451 Fed. App'x 846, 848 (11th Cir. 2012) (citations omitted). "The decision to transfer a case to another district is left to the sound discretion of the trial court[,]" *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (citation omitted), and should be based upon "an individualized, case-by-case consideration of convenience and fairness." *Clinton v. Security Benefit Life Ins. Co.*, No. 19-civ-24803, 2020 WL 6120565, at *1 (S.D. Fla. June 29, 2020) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Courts engage in a two-step analysis to determine whether transfer is appropriate. *Osgood v. Discount Auto Parts, LLC*, 981 F.Supp.2d 1259, 1263 (S.D. Fla. 2013) (citation omitted). First, the district court must determine whether the action could have brought in the alternate venue. *Id*. at 1263. The parties agree that Plaintiff could have brought this action in the Northern District of Indiana, (ECF No. 22 at 6-7; ECF No. 23 at 4), which satisfies the first step.

Second, the court must balance the following public and private factors, to determine whether convenience and the interests of justice favor transfer: "(1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Osgood*, 981 F.Supp.2d at 1263-64 (citation omitted). I evaluate each of these factors in turn.

1. <u>Convenience of the Witnesses</u>

"The convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted." *Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *3 (S.D. Fla. Feb. 22, 2008) (citation omitted); *see also LaPenna v. Cooper Tire & Rubber Co.*, No. 2:10-cv-1018-MEF, 2011 WL 2669469, at *5 (M.D. Ala. July 7, 2011) ("[T]he *most important factor* in passing on a motion to transfer venue under § 1404(a) is the convenience of the witnesses.") (citation omitted). Courts afford more weight to the convenience of non-party witnesses than the convenience of the parties or party-witnesses. *LaPenna*, 2011 WL 2669469, at *5. When the court evaluates the convenience of the witnesses, it "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Clinton*, 2020 WL 6120565 at *4 (citation omitted).

Taurus has identified Deputy Bortone and several medical personnel at St. Vincent Hospital and Starke Hospital who have knowledge regarding the circumstances surrounding and the nature of Plaintiff's injury, which are relevant to Taurus' defense that user error, rather than a manufacturing or design defect, caused Plaintiff's injury. (ECF No. 22 at 2-3). These witnesses, as well as Plaintiff, are located in Indiana. "[I]t is a well-settled principle that when possible, the trier of fact should be given the opportunity to evaluate live testimony." *Soliman v. Daimler AG*, No. 6:09-cv-00947, 2010 WL 11506980, at * 5 (M.D. Fla. Jan. 22, 2010) (citation omitted). Trial in this District would substantially reduce

this opportunity. The non-party witnesses that Taurus identifies are outside the subpoena power of the Court and, importantly, are first responders. The importance of their testimony, and the particular unlikelihood that first responders will have the means or opportunity to voluntarily travel from Indiana to Miami, weighs strongly in favor of transfer. Plainly, trial will be more convenient for these key non-party witnesses in Indiana rather than Florida.

Plaintiff argues that the Court should consider the location of three other non-party witnesses, who Plaintiff contends are important to establishing liability: (i) Brett Vorhees, CEO of Defendant Taurus International Manufacturing, Inc. ("TIMI"); (ii) Dusty Sroufe, who was the chief in-house engineer for TIMI; and (iii) Kimberly Intagliata, a former TIMI customer service manager. (ECF No. 23 at 5-6). Plaintiff contends that these witnesses have important information regarding the alleged manufacturing and design defect, and Taurus' knowledge thereof. Plaintiff, however, has not shown that any of these witnesses reside in Florida. In fact, Mr. Vorhees resides in Georgia, Mr. Sroufe resides in South Carolina, and the location of Ms. Intagliata is unclear.[3]

Mr. Vorhees is, in fact, a party witness and his convenience is afforded less weight because Taurus can compel his testimony. It is not clear whether Mr. Sroufe is also a party witness. Even if he is not, Mr. Sroufe is located closer to Indiana than this Court. (ECF No. 23 at 6). Moreover, Plaintiff does not establish the materiality of his testimony given that Mr. Sroufe worked for TIMI which did not did not manufacture or design the Pistol.

---

[3] Plaintiff states that Ms. Intagliata resides in Florida, and Taurus states that she lives in Virginia. (ECF No. 23 at 6; ECF No. 24 at 2).

With respect to Ms. Intagliata, even if the Court assumes that she resides in Florida as Plaintiff contends, the need for her testimony is in doubt. Plaintiff asserts that Ms. Intagliata would "have knowledge of other customers who complained of/reported drop-fires or unintended discharges to the company." (ECF No. 23 at 6). The necessity of such testimony is questionable given that, according to Plaintiff, Taurus knew of the alleged defect because of other lawsuits in which it was a named defendant since at least 2007. (ECF No. 1 at 11-15). This record does not support maintaining this action in the Southern District of Florida for the convenience of calling Ms. Intagliata as a witness.

The record thus reflects that there are several key non-party witnesses located in Indiana and none in Florida. The Court therefore concludes that the convenience of witnesses weighs strongly in favor of transfer to the Northern District of Indiana. *See e.g., Soliman*, 2010 WL 11506980 at *6 (granting motion to transfer in products liability action where medical personnel and law enforcement who assisted, treated and questioned plaintiff following accident lived in transferee forum while plaintiff identified only potential experts located in transferor forum); *Gonzalez*, 2008 WL 516847 at *3-4; *LaPenna*, 2011 WL 2669469 at *5 (the convenience of the witnesses "weighs strongly in favor of transfer of venue" where defendant "has pointed to a large number of non-party witnesses located in [transferee forum] and plaintiff "has not pointed to *any* witness located in [original forum]."); *Clinton*, 2020 WL 6120565 at *4 (convenience of witnesses favored transfer where numerous material witnesses were in transferee forum or in states geographically closer to transferee forum than Florida).

2.     Location of Documents and Other Sources of Proof

The parties agree that the physical location of documentary evidence is largely unimportant given their reliance on electronic document production. *See e.g., Microspherix LLC v. Biocompatibles, Inc.*, No. 11-cv-80813, 2012 WL 243764, at *3 (S. D. Fla. Jan. 25, 2012).

Taurus contends that transfer is nonetheless appropriate because a site visit to Plaintiff's home in Indiana may assist the trier of fact. (ECF No. 22 at 8). On this point, the Court is not persuaded. Taurus does not explain why a jury site visit is likely or important, how it would benefit the factfinder, and why it would not be cumulative of other evidence, such as Deputy Bortone's report or testimony. Last, Defendant also argues that the Pistol is relevant evidence, (*id*.), but it is not located in this District or in Indiana; it is located in Plaintiff's counsel's office in Alabama.

In sum, no relevant non-documentary evidence is in Florida or Indiana. The Court therefore concludes that this factor is neutral and does not weigh in favor of transfer.

3.     Convenience of the Parties

In evaluating this factor, courts consider "the appearance of employees [of parties] at court and, to some extent, the appearance of counsel." *Clinton*, 2020 WL 6120565 at *5 (citation omitted). Plaintiff resides in Indiana, Defendants, their employees, and counsel are in Georgia, and Plaintiff's counsel is in Alabama. Plaintiff asserts that he does not consider Florida an inconvenient venue, (ECF No. 23 at 8), but plainly, it is more convenient for Plaintiff to litigate this case in the Northern District of Indiana where he lives. Given that one of the parties resides in the transferee forum but none reside in this

8

District, the convenience of the parties favors transfer. *American Spirit and Cheer Essentials, Inc. v. Varsity Brands, LLC*, No. 1:20-cv-03088, 2020 WL 8115878, at *13 (N.D. Ga. Oct. 27, 2020) (court grants motion to transfer and recognizes that "this prong can favor transfer if the transferee district is home to several parties and the transferor court is home to few or none.") (citation omitted).

    4.    <u>Locus of Operative Facts</u>

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Clinton*, 2020 WL 6120565 at *6 (citations omitted). This factor has been "interpreted as the place where the events and actors material to proving liability are located." *Bell v. Rosen*, No. CV214-127, 2015 WL 5595806, at *11 (S.D. Ga. 2015) (citation omitted). The locus of operative facts in a products liability action is "where the business decisions made by the Defendant relative to the products liability theories of the case occurred." *LaPenna*, 2011 WL 2669469, at *4 (citation omitted).

Plaintiff's claims include negligence, strict liability based upon a design defect, and strict liability based upon a manufacturing defect. (ECF No. 1-1 at Counts One, Four, Five). Plaintiff's negligence claim does have a connection to this District; he alleges, among other things, that Defendants "fail[ed] to use…reasonable principles and standards in importing, testing, inspecting, marketing, and distributing Plaintiff's Pistol." (*Id*. at ¶ 69). Those activities allegedly occurred at Taurus' Miami headquarters, (*id*. at ¶ 11), which means that the relevant business decisions related to liability for Plaintiff's negligence claim occurred in this District.

Plaintiff's strict liability claims by contrast have no connection to this District. They

rely upon alleged design and manufacturing defects, and the entity that designed and manufactured the Pistol is Forjas Taurus SA, a Brazilian corporation. (*Id*. at ¶¶ 11-12). The business decisions related to Plaintiff's strict liability claims thus occurred in Brazil, a fact that Plaintiff does not contest in his opposition memorandum. (ECF No. 23 at 7).

"When there are multiple loci of operative facts and no single locus is primary in this respect, courts treat this factor as neutral in the Section 1404(a) analysis." *Clinton*, 2020 WL 6120565 at *6 (citations omitted). Here, there are arguably two loci of operative facts: Florida (for Plaintiff's negligence claim) and Brazil (for Plaintiff's strict liability claims). However, the Florida connection is attenuated because "the actors material to proving liability" regarding Plaintiff's negligence claim are not located in Florida since Taurus moved to Georgia. Stated another way, although decisions related to the events underlying liability for Plaintiff's negligence claim took place in this District, none of those decisionmakers are still located here. Given the diminished practical significance of Florida as a loci, the Court concludes that this factor weighs only slightly against transfer.

5.   <u>Ability to Compel Attendance of Unwilling Witnesses at Trial</u>

Plaintiff recognizes that there are witnesses with relevant testimony, such as Deputy Bortone and the medical personnel who treated Plaintiff at the time of his injury, who cannot be compelled to testify in the Southern District of Florida because they are beyond the subpoena power of this Court.[4] (ECF No. 22 at 10, ECF No. 23 at 8). Plaintiff

---

[4] Rule 45(c) states: "A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is

nonetheless opposes transfer because other witnesses – Ms. Intagliata, Dusty Sroufe, and "former employees of the Defendants who may reside outside of either district" – cannot be compelled to testify in Indiana. (ECF No. 23 at 8).

As discussed above, Plaintiff has not shown that Ms. Intagliata is a key witness, nor is it clear that she works or resides in Florida. Plaintiff's reliance on Mr. Sroufe is similarly insufficient because he cannot be compelled to testify in either this District or Indiana. Plaintiff makes a vague reference to undisclosed "former employees" whose whereabouts are unknown. He does not identify these witnesses or show their importance. Pure speculation cannot defeat transfer. Given that neither party identifies any potential key witnesses located in Florida and it is undisputed that there are key witnesses located in Indiana, I conclude that the fifth factor favors transfer.

6. <u>Relative Means of the Parties</u>

Taurus does not dispute that it has the financial means to litigate this case in either Indiana or this District. (ECF No. 22 at 11). Plaintiff asserts that he "filed this case in the Southern District of Florida, so it is within his means to litigate here." (ECF No. 23 at 9). This conclusory and vague statement is not helpful. Plaintiff does not dispute that it will be less expensive for him to litigate in the Northern District of Indiana, nor does he expressly state that he has the financial ability to litigate in this forum. In fact, the record reflects that Plaintiff resides in modest housing and is unable to afford needed medical care for his injuries. (ECF No. 1 at ¶ 64; ECF No. 22-3 at 3). Given the cost savings to Plaintiff

---

commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c).

if this action proceeds in his home county, and the undisputed financial ability of the corporate defendant to litigate this case in either forum, the Court concludes that the relative means of the parties favors transfer.

7. <u>The Forum's Familiarity with Governing Law</u>

A forum's familiarity with governing law "is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Clinton*, 2020 WL 6120565 at *7 (citation omitted). Taurus contends that this action is governed by Indiana law. (ECF No. 22 at 11). There are no complex or novel issues of state law raised and thus, as both parties recognize, both this Court and the District Court in Indiana can competently apply Indiana law. Accordingly, the Court concludes that this factor does not support transfer.

8. <u>Plaintiff's Choice of Forum</u>

"The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Taurus argues that Plaintiff's choice of forum is not entitled to deference because Plaintiff does not reside in this district. Taurus is correct that "where a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Cellularvision Technology & Telecommunications, L.P. v. Alltel Corp.*, 508 F.Supp.2d 1186, 1189 (S.D. Fla. 2007) (citation omitted). Plaintiff nonetheless contends that his choice of forum is entitled to deference because "the locus of operative facts unquestionably occurred in the Southern District of Florida." (ECF No. 23 at 9). As

12

discussed above, only some of the operative facts occurred in this District and none of the witnesses relevant to liability are located here. These facts substantially undermine the material connection between Plaintiff's claims and this District. For these reasons, the Court concludes that Plaintiff's choice of forum is entitled to less deference and weighs only slightly against transfer.

9. Trial Efficiency and the Interests of Justice

In evaluating this factor, "courts consider administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum." *Clinton*, 2020 WL 6120565 at *9 (citation omitted). Taurus argues that transfer will promote the interests of justice and enhance trial efficiency because the Northern District of Indiana has considerably fewer cases pending than in this District. (ECF No. 22 at 13). The statistics that Taurus relies upon demonstrate that, indeed, "the Southern District of Florida has one of the busiest dockets in the country," (*Clinton*, 2020 WL 6120565 at *9) (citation omitted), and has considerably more cases filed and pending than in the Northern District of Indiana. (ECF No. 24 at 4). As noted, although Taurus was located in Florida at the time it distributed the Pistol, it no longer has any connection to this District since its move to Georgia in 2019. Further, Indiana has an interest in deciding this dispute because Plaintiff resides there. As for jury duty, it is not unfair to ask an Indiana jury to decide this dispute given that the injured party is an Indiana citizen. On balance, the Court concludes that this factor favors transfer.

13

Having considered all the relevant factors in the transfer analysis, the Court concludes that the balance weighs strongly in favor of the alternative forum. Accordingly, transfer to the Northern District of Indiana is appropriate "[f]or the convenience of the parties and witnesses [and] in the interests of justice…." 28 U.S.C. §1404(a).

### III.   CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** that the Motion to Transfer Venue, (ECF No. 22), is **GRANTED**. The Clerk of Court is **DIRECTED** to transfer this action to the United States District Court for the Northern District of Indiana. All pending motions are **DENIED AS MOOT** and the Clerk of Court is instructed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of April 2022.

                                                  */s/ Chris McAliley*
                                                  CHRIS McALILEY
                                                  UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record